Good morning, Your Honor. May it please the Court, I'm Kyle Abbey for Appellant Mojave Desert Holdings. Proceed. I'd like to reserve five minutes for rebuttal. This case is about whether the District Court, the Bankruptcy Court, can dismiss a claim pursuant to a settlement when that was not an express provision of the settlement that was made. As the record states, and as described in our briefs, on May 17th, the agreement was reached between the parties. And the agreement had very expressed provisions in it. And those provisions included a $4.3 million allowed claim for Gemcap, as well as a $4.9 million investment on behalf of a third-party OIG investing into the company. There was no mention at all of the adversary proceedings in these terms. Afterward, the parties also agreed to agree in the future to bid procedures. And there was, again, no mention of the adversary proceeding. And there was still, at the time, there was a calendar, a motion to dismiss the adversary claim by Gemcap. Subsequent to that, fast forward to June 28th, and this is the context of discussion of the allowed secured claim. The court held that a deal was a deal. This was with regard to a third party that was a third-party unsecured creditor. The court stated that a deal was a deal. Gemcap had relied on the agreement. And Gemcap had allowed the dogs to expend millions of dollars of collateral. Again, this court, there's still the same proceeding. The motion to dismiss is still pending for the adversary proceeding, the adversary claim. And there was no mention of that being part of the original agreement at all. So had, at this point, the dismissal of the adversary proceeding been part of the agreement, there would be no talk of it. There would be no discussion of it being something that could be carved out by an unsecured creditor. Again, going forward after this, when OIG had a successful bid that was allowed by the court, OIG mentioned that it was approached by James Mann to purchase the adversary claim. Again, there was no mention of it being dismissed. That didn't exist anymore. It was part of an agreement. Why wasn't it implied that it involved a settlement of the adversary proceeding, given the fact that the bankruptcy court was considering not only the main bankruptcy but the adversary proceeding when the settlement was negotiated? Well, our view is that it wasn't implied. It wasn't stated expressly. And the reason why it wasn't implied was because the motion to dismiss was still pending through this whole period. So had it been an implied part of the agreement, the motion to dismiss would have been taken off calendar. It wouldn't have been discussed in the terms that it was discussed at these various hearings. But when you first, or when DOGS first told the bankruptcy court you were negotiating the settlement, you described it as something that would be a resolution of the motions, including the motion to dismiss the adversary proceeding. So wasn't it reasonable for the bankruptcy court to think that you had created the impression that this was resolving everything, including the adversary proceeding? Well, my understanding and my view of it is that it was resolving all of the claims, Jim Katz's claims against DOGS, not the adversary proceedings, which were DOGS' claims against Jim Katz. But how could it be a resolution of the motions, which included the motion to dismiss the adversary proceeding, without also resolving the adversary proceeding? We didn't understand it as a resolution of all the motions. It was just the claims from Jim Katz against DOGS, the company. That wasn't an understood part of the motions that were going to be resolved through this settlement. But the conduct of the bankruptcy court and the conduct of the other parties certainly suggests an understanding on their part that that's what had happened, don't you think? I would disagree with that, Your Honor. Their conduct, the way I look at it in sort of the negative way, had it been something that was understood, then it would have been a term in the May 17th agreement. It would have been listed there as one of the revisions. Similarly, afterward, in June 28th, then it would not have been discussed as something that could have been carved out from the sale. And afterward, the fact that OIG had been approached by James Mann would not be relevant, because they had been something that had already been dismissed. Because by June 28th, the court had said a deal was a deal. Jim Katz had relied on the agreement due to detriment, and the parties would have been judicially stopped from making arguments contrary to that. Nonetheless, they still discussed the adversary proceedings. Well, the BAP seemed to hold, if I read it correctly, that the adversary proceeding was necessarily resolved because it resulted in the settlement liquidated the amount of the claim. How do you respond to that? Well, Your Honor, the BAP is reading into it that that was implied, much as Your Honor, Judge Miller did. However, it was not expressed as part of the agreement. And our position is that it had to be expressed as part of the agreement to be considered for dismissal. That's part of the agreement. Edwine, can you address—I mean, the questions I've just been asking were going to the judicial estoppel argument. The bankruptcy court suggested that it was relying in part on judicial estoppel. You didn't address that before the BAP. Why shouldn't we conclude that your challenge to that alternative holding has been forfeited? Your Honor, it wasn't directly brought up in the opening brief for the BAP. However, our view on that is judicial estoppel doesn't apply here. Just because when the court brought up the judicial estoppel point, it had to do with the May agreement. And our understanding is that the May agreement did not include dismissal of adversary claims. So judicial estoppel did not apply to what's on point here as to whether that should be dismissed or not. Unless the panel has any more questions, I'd like to yield my time to the rebuttal. Thank you, Counsel. Mr. Lander? Thank you, Your Honors. What Mr. Abhi is describing—and this is not the first time we've dealt with this argument— is that the allowed secured claim that was the centerpiece of this settlement is not actually allowed. He makes the point that we didn't specify the adversary. The fact of the matter is, on May 17, 2018, an adversary complaint had been filed in February as part of this bankruptcy proceeding. It specifically objected to Jem Capp's claim. The prayer for relief in the adversary seeks the disallowance of Jem Capp's claim. On May 17, after three or four months of very contentious litigation, the use of Jem Capp's cash collateral, and clear on the record evidence that the projections that USAID dogs had made to the bankruptcy court in February to secure cash collateral, were illusory and collapsing. The company was losing a huge amount of money. Jem Capp made a very pragmatic decision. He made a decision to reach an agreement, compromise its claim to $4.3 million, support a plan of reorganization, and as part of that, to relinquish its then pending objections to the use of cash collateral, while hopefully the debtor would consummate his reorganization plan. The centerpiece, the only real true consideration for Jem Capp as part of that agreement, was the agreement by USAID dogs that Jem Capp's claim would be allowed. And by allowed, I mean that's a term of art. It means objections are now waived. And so what the appellant is contending today, and it's been contending this for years, because it didn't like the result of the settlement it reached. What's clear on the record on May 17, 2018, clear on the record in the disclosure statement, that the debtor filed on June 5, 2018, was that this agreement had multiple parts. Jem Capp would get an allowed, secured claim of $4.3 million. That's a compromise of its claim. It would support the plan of reorganization. It agreed to do that. It would allow the continued use of cash collateral. It agreed to do that. It relied on the fact that allowed means allowed. You have an allowed, secured claim, but the debtor still gets to contest that claim later on if they don't like the results. That's not a settlement. That's a gratuity on the part of Jem Capp. But, and again, I refer the panel to the disclosure statement filed on June 5, 2018. By the debtor, the reorganization disclosure statement, page four of that document defines what an allowed claim is and makes the point very specifically, and I read directly from the record, this is supplemental excerpts of the record, 433. If your claim is not an allowed claim, it is a disputed claim, and you will not be entitled to vote on the plan unless the bankruptcy court temporarily or provisionally allows your claim for voting purposes pursuant to Bankruptcy Rule 318. Those are the words of the debtor. That's a definition of what an allowed claim is, which is to say it's disputed if it's not allowed. Jem Capp's claim pursuant to this agreement was allowed. Going forward, Jem Capp consented to its consideration, offered its consideration. Cash collateral continued to be used. The fact of the matter is that as part of the settlement, this is on the record for purposes of the May 17, 2018 transcript. It's likewise in the disclosure statement. Jem Capp wanted to ensure that if the funder, the reorganization partner, OIG, did not deposit the money that was going to fund the reorganization plan, there would be an auction because Jem Capp's claim is now allowed. That's in the record in the transcript. It's in the disclosure statement. So this was a multi-pronged settlement. Jem Capp wanted to ensure the money would be funded. If it wasn't funded, there would be an auction. Again, the May 17 transcript is somewhat revealing because, as John noted, it does contemplate and address the dismissal or the resolution of the pending motions. Additionally, there is an argument. There are two issues with respect to the May 17 transcript. One is I took pains to make clear to the court that there was an element of the overall overarching dispute between Jem Capp, the debtor, and its principals that was not part of this settlement. That is specifically guarantee claims that were pending in the United States District Court in the Central District of California. The May 17 transcript makes clear that is not part of the settlement. So we did explain to the court those components of a dispute that were not part of it. That wasn't relevant to the bankruptcy court because the guarantors were not before it. So all disputes before the bankruptcy court with respect to the claims between Jem Capp and the debtor were necessarily concluded on May 17. And again, not to harp on the same language, but allowed means allowed. And we contemplated and put on the record, and it's in the debtor's disclosure statement, what would happen if, in fact, this reorganization plan collapsed, which it did. The funder, the partner, OIG, did not ask for the funds on June 15, 2018, as required. So we had an auction on June 29, 2018. I found Mr. Abhi's reference to June 28 revealing for what he did not say. The fact of the matter is that on June 28, Double Diamond Distribution, which is a company owned by Steve Mann, who is the owner of the debtor, objected to Jem Capp making a credit bid. Jem Capp had indicated to the bankruptcy court that its intent was to make a credit bid. Mr. Double Diamond, through other counsel, not through the debtor's counsel, made the argument that we're hearing today. That the allowed secure claim was actually subject to dispute. And Mr. Bernande, we have this cited in our brief on page 42. He specifies the fact that the adversary objected to the Jem Capp claim. And the entire premise of our opposition to that motion was that we had an agreement. And there'd be absolutely no purpose for Jem Capp to enter into the agreement it entered into on May 17, which contemplated that the reorganization plan would not ultimately be consummated if the debtor could later come back and contest the claim through the adversary. Under those circumstances, Jem Capp would essentially receive no consideration for the agreement. None. Because it's just on a wing and a prayer on the hope that OIG would fund and the reorganization plan would reach fruition. On June 28, 2018, counsel for Double Diamond, again, owned by the equity of the debtor, made the argument that day that, in fact, the settlement did not speak specifically to the adversary. And so the adversary should somehow remain alive. Judge Barbero, as Mr. Abhi said, ruled that a deal is a deal. And, in fact, we have the quote on page 43 of our brief. Mr. Bernande, who was counsel for Double Diamond, asked the bankers court, is their claim allowed then, considered to be allowed? Judge Barbero responded, based upon the agreement that was put on the record on May 17, their claim is allowed. That's the bankruptcy court affirming what was obvious from the record on May 17. This claim was allowed. Jem Capp was then entitled to proceed with a credit bid on June 29, which it did. OIG ultimately prevailed in the bid, but Jem Capp made a bid. And, again, the disclosure statement filed on June 5, 2018, by the debtor, is clear and emphatic. You don't get to bid if you're not an allowed claim. So, on June 28, you have the bankruptcy court affirming the clear import of the settlement that had been reached. Namely, that an allowed claim means there are no further disputes to the amount of the claim, which was compromised by Jem Capp. Then, the auction occurred on June 29. We went through a lengthy negotiation process that resulted in a sale order, which is also in the record. The sale order, which was negotiated in part by the debtor, agreed to by the debtor, at paragraph U, makes very specifically clear that Jem Capp has an allowed secured claim of $4.3 million. That's the amended excerpts of the record on page 344. That is July 20, 2018. And then, still, there's an effort to unwind this settlement, and Judge Barbero ultimately did what was inevitable, and that is that she granted the motion to dismiss the adversary, which we didn't think we would have to file. I mean, there's this question raised, so let me answer it, about why the adversary was not dismissed on May 17, 2018. The answer is very simple. It was gone from our perspective. Once the claim is allowed, then their disputation of the claim, which is precisely what the adversary claim is, is vitiated. And, quite frankly, there was a lot of material on the docket that day, and what we were principally concerned with was not something that was obviously waived and dismissed as a result of the settlement, but rather what's going to happen if the money isn't deposited. And you'll see from the May 17, 2018 transcript, that actually consumes a significant amount of the discourse on the record on May 17. The debtor wanted to delay the auction. Jem Capp wanted a faster auction. We had agreed that there would be an auction. The only issue that was outstanding on May 17, 2018, was when the auction would actually occur. So there you will see in the record, there's a discussion of when that auction would occur. Judge Barbero ultimately found that that auction should proceed on June 29. But the fact of the matter is that, of course, Jem Capp assumed everybody knew that the adversary was gone. This was not an allowed, secured claim if the debtor retained the right to proceed later and contest the amount of the claim. That's a disputed claim. And no matter how many ways they tried to slice this apple, we get back to the same issue. They want this to be something other than an allowed claim. And they've come up with all sorts of arguments about whether it was conditioned on the consummation of the reorganization plan. That's defied by the record. Both the May 17, 2017 transcript and the June 5, 2018 disclosure statement made clear that the party specifically contemplated that OIG would not fund the plan and the fund would thus collapse, which is what transpired. So from our perspective, my client has been put to enormous time and expense trying to simply establish what Judge Barbero found on multiple occasions, both on June 28, 2018, based on facts before her. And they need to establish clear error on her part, and they have not come close to meeting that standard. And then later in dismissing the adversary, and she dismissed the adversary precisely for the reason she denied Double Diamond's motion on June 28, and that is a deal is a deal, as she put it. And so now here we are. We went to the Bankruptcy Appellate Panel, which affirmed what Judge Barbero did because she had the facts before her. And now we're here before the Ninth Circuit, and my client continues to incur expense with respect to a settlement agreement that should have been clear and unambiguous on the record on May 17, 2018. And I think, again, that this is an exercise in futility. We don't think there's any basis for it. The Holly Kalani case, which we cited, makes clear that you don't need to have every express term on the record when you place a settlement on the record for purposes of effectuating it. So the fact that the parties did not say on the record on May 17, 2018, the adversary claim is dismissed today, in no way undermines the clear import of the settlement, which was there is a claim, there's been a dispute to the claim, that claim is now allowed. That is a very clear term. That has very clear legal implications. There should be no ambiguity about it. We should not still be here arguing about it, but nonetheless, here we are. So I've taken up 13 minutes. If the panel has any questions for me, I'm certainly happy to answer them in my remaining two minutes. Well, I guess I'm curious, and if you could say this, maybe the answer is there was a lot going on that day, but why wasn't the dismissal of the adversary claim made an express term of the settlement agreement? Well, the answer, Judge Thomas, is looking back on it now in retrospect, I wish I had said that. I will be very blunt with you. It was not something that was really under consideration. Once the claim was allowed, it was just assumed that the adversary was gone, and there was a lot on the record. I mean, we were dealing with several matters. We were dealing with the cash collateral issue, and there was one outstanding issue that took a fair bit of time to negotiate, and you'll see from the transcript on May 17th, we take a multitude of breaks. And the one issue we were trying to negotiate, not the term of the settlement as to whether or not there'd be an auction in the event that OIG declined to fund on June 15, 2018, but when that auction would be. And when we were taking breaks, our local council had an office across the street. We were convening to the office and trying to negotiate. We ultimately came back and decided we'd have to let Judge Barbero determine when the auction was occurred, but that was the issue that was principally in dispute on May 17, 2018. The simple answer to your question is nobody contemplated that we would need to include language such as the adversary is presently dismissed. Once the claim was allowed, it was obvious they were agreeing to the amount of the claim, and it wouldn't be necessary to specify that the adversary is now dismissed. Of course it was going to be dismissed, the claim. There could be no other result if they've now agreed to an allowed, secured claim. But again, exercising self-reflection, knowing now in October of 2020 that we'd still be arguing this, yes, I wish I had put that on the record. But to be fair, that in no way undermines the clear import of the settlement from our perspective. Any other questions from the panel? Okay. Rebuttal? Yes, I'd like to respond to some of the items Mr. Landers raised. First of all, with regard to Jim Kapp's consideration, Mr. Landers implies that Jim Kapp agreed to this claim because it received consideration by dismissing the adversary claim. However, I want to point out that Jim Kapp's original claim was $3.9 million, and their allowed, secured claim was $4.4 million. So there is consideration there for Jim Kapp, a cash consideration, for Jim Kapp agreeing to the reorganization, other than what they claim is the dismissal of the adversary action. But you were, in your adversary proceeding, you were seeking for a different determination of what the allowed claim was, correct? I understand the adversary proceeding included, there was an objection, as Mr. Landers noted. However, there are also direct claims against Jim Kapp, other than those related, you know, directed at objecting to their claim. Well, there is an offset slot and so forth, right? Correct, correct. So when the court in the settlement was that this is the allowed claim, why didn't that necessarily mean that the adversary proceeding should be dismissed? As Mr. Landers points out, with the definition of allowed versus disputed, this is correct. To the extent that there is an objection to Jim Kapp's claim, yes, that objection would no longer stand. However, there are also affirmative claims against Jim Kapp as part of the adversary claims. And those are not necessarily dismissed, you know, as part of any kind of agreement or allowing Jim Kapp's claim to go forward. So explain to me how you think this would have gone forward had the parties intended that the adversary proceeding proceed.  So after the case had settled, whether the reorganization plan had been effectuated or not and it was sold off, it would be a litigation asset that could be used in the future by anybody who purchases it and they could bring a claim against Jim Kapp on that basis. Would you agree that if the plan had been confirmed, that would extinguish your claim, the adversary complaint claim? No, we do not agree with that, Your Honor. Whether the plan had been confirmed or it fell apart, the adversary claim still exists as a litigation asset to be used by whoever the owner of that asset would be. Similar to the Crocs litigation asset, which is another issue in this case. I'd also like to point out that Mr. Landers noted that on June 28th, counsel for Double Diamond had objected to the allowed claim. And the judge at the time pointed out that a deal is a deal. And then when asked specifically about the adversary claim, the judge said that will be continued. So that's not part of the deal. She specifically said that that will be continued, and she didn't say, oh, that's part of the deal, that those are gone. Had the understanding been that those were gone, that that's what she would have said, rather than that will be continued, but a deal is a deal with regard to the other issues there. So, in conclusion, the judge clearly erred here. Thank you for clearly erring, because this was not part of the agreement. The judge later on read it into the agreement after the fact and dismissed the claim without any basis for doing so. All right. Thank you both for your arguments. They've been very helpful to the court. The case is heard. It will be submitted for decision. And we'll proceed with argument on our last case on the oral argument calendar today.
judges: Kelly, Thomas, Miller